SANDERS, Justice.
The Grand Jury of St. Martin Parish indicted Russell Alexander for the murder of Mrs. Aline Bulliard Carter. Upon arraignment, he pleaded not guilty and the court fixed a time for filing pleas and motions. The defendant filed motions to quash the indictment and for a change of venue, based upon the allegation that widespread prejudice existed against him in St. Martin Parish. After hearing, the trial judge took the motion to quash “under, advisement” but granted a change of venue to St. Mary Parish in the same judicial district. Several months later, acting in the St. Mary Parish proceeding, the trial judge[1] quashed the indictment.
The defendant was then reindicted by the Grand Jury of St. Mary Parish for the same offense. After trial, the jury returned a verdict of guilty. The defendant filed a motion in arrest of judgment based upon the ground that the indictment returned by the St. Mary Parish Grand Jury was void. After overruling the motion, the court sentenced the defendant to death. The defendant has appealed, relying upon seven bills of exceptions reserved in the trial court.
On August 27, 1965, Mrs. Aline Bulliard Carter was missing from her home at St. Martinville, Louisiana. The Sheriff and his deputies found the house in disarray with blood stains on the floor. Suspicion attached to a 24-year-old Negro, Russell Alexander, a sexual deviate of low *569 mentality. After being interrogated by the police officers in the presence of his mother, he admitted he killed Mrs. Carter with a hammer at her home and disposed of her body. He then led the officers to the body.

Bill of Exceptions No. 1

The defendant reserved Bill of Exceptions No. 1 to the introduction in evidence of his written confession. Defendant contends the confession was involuntary because of physical mistreatment, consisting of beating and denial of food, a promise by Deputy Sheriff Roy Bonvillain to “help” the defendant, and an exhortation to defendant by his mother to tell the truth.
To render a confession admissible in a criminal prosecution, the burden is upon the state to prove beyond a reasonable doubt that it was free and voluntary. State v. Ragsdale, 249 La. 420, 187 So.2d 427, cert, denied 385 U.S. 1029, 87 S.Ct. 758, 17 L.Ed.2d 676; State v. Scott, 243 La. 1, 141 So.2d 389.
The trial judge analyzed the evidence relating to the confession and concluded defendant’s charges of physical mistreatment and coercion were unfounded and the state had satisfied the burden of proof. We agree with the findings of the trial judge.
It is true defendant’s mother exhorted him to tell the truth prior to his confession. She was present while the Deputy Bonvillain talked to her son. The evidence, however, refutes any suggestion of intimidation or coercion. Under the circumstances, the mother’s exhortation does not render the confession involuntary. See State v. McAllister, 244 La. 42, 150 So.2d 557, cert. denied 375 U.S. 260, 84 S.Ct. 362, 11 L.Ed.2d 311; and State v. Bueche, 243 La. 160, 142 So.2d 381.
In this Court, the defendant also contends the confession is inadmissible because of the officers’ failure to give defendant the fourfold warning required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided by the Supreme Court of the United States on June 13, 1966. The Bill of Exceptions makes no mention of the lack of warning. But assuming that the issue is raised by the general averments, we find the contention lacks merit.
Trial of the present case began on March 14, 1966, before the Miranda decision. Hence, since the holding is not retroactive, it is unavailable to the defendant. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; State v. Johnson, 249 La. 950, 192 So.2d 135, cert, denied 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374; and State v. Evans, 249 La. 861, 192 So.2d 103, cert, denied 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed.2d 187.
The evidence reflects, however, that before defendant made his written confession *571 he was advised that he had a right to remain silent, that anything he said would be used against him, and that he was entitled to a lawyer.
We conclude the Bill of Exceptions is without merit.

Bills of Exceptions Nos. 2,3, 4, and 5

Defendant reserved these four Bills to the introduction into evidence of a hammer, several articles of women’s clothing, pieces of telephone wire, and two photographs of the body of the deceased. Defendant objected to this evidence on the ground it was irrelevant and tended to inflame the minds of the jurors.
During the investigation, defendant told the officers he struck the victim with a hammer and disposed of the hammer near the place he had left the body. The officers found the hammer at this location.
The garments bearing blood stains were also found near the victim’s body. Garments of this type were missing from the body.
Defendant stated he cut the telephone wires at the home of the victim when she attempted to call for help. The State introduced two pieces of the wire in evidence.
The hammer, garments, and wires were relevant. The defendant allegedly used the hammer to strike the fatal blows. Each of the other objects was closely connected with the crime. The State laid a sufficient foundation for the introduction of the objects. The jury, of course, determined the weight to be accorded to them.
The photographs are also relevant. They tended to establish the death and identity of the victim. Additionally, they tended to corroborate other evidence that the killing occurred in the perpetration of of aggravated rape for application of the felony-murder doctrine, as defined in LSA-R.S. 14:30, on which the indictment was founded.
In State v. Morris, 245 La. 475, 157 So.2d 728, we summarized the law relating to the use of photographs as follows:
“[W]e have on numerous occasions stated that the mere fact that photographs are gruesome and tend to prejudice the jury does not render them inadmissible in evidence if they are otherwise admissible. See State v. Johnson, 198 La. 195, 3 So.2d 556, State v. Ross, 217 La. 837, 47 So.2d 559, State v. Solomon, 222 La. 269, 62 So.2d 481, State v. Eubanks, 240 La. 552, 124 So.2d 543, and State v. Collins, 242 La. 704, 138 So.2d 546. We think, however, that this rule is subject to the reservation noted in the vast majority of the common law jurisdictions and expressed in 23 C.J.S. 353, verbo Criminal Law § 852 (1) c: “As a general rule, where photographs are *573 otherwise properly admitted, it is not a valid objection to.their admissibility that they tend to prejudice the jury. Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect. Accordingly, photographs should be excluded where their logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture; and photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions.”
We have examined the photographs. Although any photograph of human death is unpleasant and revolting, the present photographs are not unduly gruesome. As pointed out by the trial judge, the camera distance was such as to minimize the gruesome aspects of the scene. Applying the test laid down in the foregoing decision, we conclude the probative value of the photographs greatly outweighs any probable prejudicial effect.
The Bills of Exceptions lack merit.

Bill of Exceptions No. 6

The defendant reserved Bill of Exceptions No. 6 after the trial judge ruled that defense witness Frank W. Krevanick, an unlicensed practicing psychologist, was unqualified to testify as an expert as to the sanity of the defendant at the time of the crime. The court permitted the witness to testify concerning the psychological tests he had given the defendant and to other facts within his special competence.
LSA-R.S. 15:466 provides:
“The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.”
The competency of an expert is a question of fact. The trial judge has wide discretion in passing upon the qualifications of such a witness. On appeal, his ruling will not be disturbed in the absence of manifest error. State v. Smith, 231 La. 649, 92 So.2d 569; State v. Mills, 229 La. 758, 86 So.2d 895, cert, denied Vernaci v. State of Louisiana, 352 U.S. 834, 77 S.Ct. 51, 1 L.Ed.2d 53; State v. Dowdy, 217 La. 773, 47 So.2d 496; State v. Carter, 217 La. 547, 46 So.2d 897.
The witness possessed no qualification as a psychiatrist. Under the cir *575 cumstances shown, we find no manifest error in the ruling of the trial judge.

Bill of Exceptions No. 7

Defendant reserved Bill of Exceptions No. 7 to the overruling of his motion in arrest of judgment based upon the nullity of the indictment by the Grand Juxy of St. Mary Parish. The defendant contends that, despite the change of venue, the St. Maxy Parish Grand Jury had no jurisdiction to indict for the offexise committed in the adjoining parish. Defense counsel reason that, upon the quashing of the indictment, the order changing venue became moot, divesting St. Mary Parish of jurisdiction of the case.
The record reflects the trial judge quashed the indictment after the change of venue.[2] Plence, the precise question presented is whether the Grand Jury of the parish to which the venue of a criminal prosecution has been changed may return a corrective indictment for the same offense, when the court quashes the indictment after the change of venue. The question is res nova in Louisiana. The authorities elsewhere are divided on the question. See State ex rel. Adams v. Grimes, 80 Wash. 14, 141 P. 184; Watkins v. United States, 3 Ind.T. 281, 54 S.W. 819; Kelley v. Commonwealth, 189 Ky. 778, 225 S.W. 739; Gonzalis v. Lynch, Okl.Cr., 282 P.2d 255; Joyce on Indictments, § 121, pp. 146— 148 (2d ed. 1924); 16 C.J., Criminal Law, § 335, p. 220; 22 C.J.S. Criminal-Law § 217 pp. 564-568; 21 Am.Jur.2d, Criminal Law, § 434, p. 439; and Annotation, 18 A.L.R. 715.
A resolution of the question in Louisiana depends upon the construction of pertinent constitutional and codal provisions.
Article I, Section 9 of the Louisiana Constitution provides that no person shall be held to answer for capital crime except on a presentment or indictment of a grand jury. The Constitution, however, designates no specific grand jury to- return a corrective indictment after a change of venue.
Concerning the authority of the grand jury, former LSA-R.S. 15 :209, at the time of the trial, provided:
“The grand juxy shall inquire into all crimes punishable with capital punishment and into all other crimes triable within the parish, when their attention has been directed to the subject of such crime either by instructions from the court or at the instance of the district attorney, and the grand jury ought to find an indictment in every case sub *577 mitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction.” (Italics ours.)
To the same effect, see LSA-C.Cr.P. Article 437 (1967).
Concerning the change of venue, former LSA-R.S. 15:296 provided:
“The clerk of the court to which any cause shall have been thus removed shall, on receipt of the indictment and other papers, enter the cause upon the docket of his court; and it shall he heard, tried and determined in the same manner as if the proceedings had originally been instituted therein.” (Italics ours.)
To the same effect, see LSA-C.Cr.P. Article 623 and 624 (1967).
Hence, a grand jury has the authority to indict if a capital offense is “triable within the parish.” Upon a change of venue, the case is removed, or transferred, to another parish. The code article vests the court of that parish with the authority to proceed “in the same manner as if the proceedings had originally been instituted therein.” The grant of authority is extremely broad. It is sufficient, in our opinion, to make the offense triable in the transferee parish within the intendment of the law defining the grand jury’s authority. Hence, the Grand Jury of that parish may return a corrective indictment, when the original indictment is quashed after a change of venue.
We conclude, then, that the Grand Jury of St. Mary Parish properly reindicted the defendant.
The question as to whether the Grand Jury of St. Martin Parish, the parish of origin, could have reindicted the defendant is not before us. Hence, we express no opinion as to this question.
The Bill of Exceptions is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
McCALEB and BARHAM, JJ., and FOURNET, C. J., dissent with written reasons.

. The same trial judge presided in both St. Martin and St. Mary Parishes.

. Tlie trial judge quashed the indictment on the ground tlie defendant had been denied his right to “an unbiased Grand Jury.” The State took no appeal from this ruling. See LSA-C.Cr.P. Art. 912. Hence, it became final. We have serious doubts as to the correctness of the ruling.