DIXON, Justice.
On March 31, 1977 this court granted the defendant’s application for writs, 343 So.2d 1074, to decide an issue which is res nova in Louisiana. The particular facts giving rise to this litigation are as follows. On January 15, 1976 various acts of vandalism and property damage occurred at a chemical plant in Lake Charles, Louisiana. Over one hundred men allegedly participated in this incident and, in addition to the property damage, one man was killed and several others injured. As a result of an investigation conducted by the Calcasieu Parish district attorney’s office and the office of the Attorney General, thirty-one indictments were handed down charging sixteen separate defendants with crimes ranging from criminal conspiracy to commit aggravated criminal damage to property to first degree murder. No two defendants were charged in the same indictment. The defendant, Willard Carlock, Sr., was charged in four indictments with criminal conspiracy to commit four counts of aggravated criminal damage to property, criminal conspiracy to commit theft of not less than $10,000, manslaughter, and three counts of aggravated criminal damage to property.
Prior to trial the defendant Carlock filed a motion for a change of venue which was granted by the trial judge in the Fourteenth Judicial District Court, Parish of Calcasieu. Two other defendants also succeeded in having the venue changed in their cases. All three of these cases were ordered transferred to the Twenty-fourth Judicial District Court in Gretna, Jefferson Parish, Louisiana. The Supreme Court assigned the Honorable Alvin V. Oser to preside at the trial of the transferred cases. On February 11, 1977, following the transfer, the district attorney of Calcasieu Parish was recused from prosecuting any or all of the remaining cases arising out of the incident at the chemical plant. The trial of defendant Carlock was set by Judge Oser to proceed on March 21, 1977. On February 28, 1977 the Attorney General appointed Michael S. Fawer as special assistant attorney general to act as district attorney ad hoc in all cases arising out of this incident. On March 2, 1977 Mr. Fawer informed Judge Oser that he intended to file a new bill of information in the Fourteenth Judicial District Court against all of the defendants with outstanding indictments, charging them collectively with conspiracy and aggravated criminal damage to property. Once this new information was filed in Cal-casieu Parish, Mr. Fawer intended to nolle prosequi the indictments pending against Carlock that had been transferred to Gret-na. On March 3, 1977 Mr. Oarlock’s attorney was advised of the State’s intention in this matter.
On March 7, 1977, prior to the filing of the new information, defendant Carlock filed a motion for speedy trial. Hearing on the motion was set for March 18, 1977. On March 14,1977 the new information (including charges against the defendant Carlock) was filed in the Fourteenth Judicial District Court, Calcasieu Parish. The charges in the new information arose out of the same incident and included two charges originally found in the four indictments against the defendant. On March 18, 1977 Mr. Fawer dismissed the four pending indictments against defendant Carlock in the Twenty-fourth Judicial District Court in Gretna by entering a nolle prosequi as to each indictment. That same day Judge Oser denied the defendant a hearing on his motion for a speedy trial on the ground that since the prosecution had been dismissed, he no longer had jurisdiction to. hold any hearing regarding this case. Arraignment on the new information was set for March 22, 1977 in the Fourteenth Judicial District Court in Calcasieu Parish. On March 21, 1977 the defendant filed with this court an application for writs of certiorari, prohibition, mandamus and for a stay order to stay the defendant’s arraignment on the new information. This court ordered a stay of the proceedings against Mr. Carlock in Calca-sieu Parish until further notice by this court. On March 31, 1977 the defendant’s *894 application for writs was granted. 343 So.2d 1074.
The central issue in this case is whether the special assistant attorney general had the authority to dismiss the charges in the Twenty-fourth Judicial District Court, to which the cases had been transferred, recharge the defendant by information in the Fourteenth Judicial District Court, the transferring forum, and thereby circumvent or nullify the change of venue originally granted the defendant. On the facts presented here we find that the special assistant attorney general had no such authority.
Both the United States and Louisiana Constitutions guarantee a defendant in a criminal prosecution the right to be tried by an impartial jury. U.S.Const. Amend. VI; La.Const. art. 1 § 16.[1] In order to guarantee this right, our legislature, early on, recognized the need for a procedure whereby the site of the trial could be changed when it is impossible to select an impartial jury. C.Cr.P. 621-27 provide the authority and mechanism for either the State or the defendant to obtain a change of venue if for any reason “. . .a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.” C.Cr.P. 622. C.Cr.P. 623 and 624 provide for the transfer of the case after the change of venue has been granted:
“When a change of venue is granted, the court shall transfer the case to another parish.” C.Cr.P. 623.
“When a change of venue is granted, the clerk of the court in which the case is pending shall make and retain copies of all documents relating to the case. He shall deliver the original documents together with certified copies of all minute entries of the case to the clerk of the court to which the case is transferred, who shall enter the case upon the docket of the court, and the case shall be proceeded with in the same manner as if the proceedings had originally been instituted therein.” C.Cr.P. 624. Emphasis added.
In this case, due to the publicity surrounding the incident at the chemical plant, defendant Carlock had moved for a change of venue for the stated reason that he could not obtain a fair and impartial trial in Calcasieu Parish. The trial judge in the Fourteenth Judicial District Court granted the motion and ordered the case transferred to the Twenty-fourth Judicial District Court in Gretna, Jefferson Parish.
In brief and on oral argument, the special assistant attorney general sought to demonstrate that his actions were taken in good faith in an attempt to consolidate all of the cases in the interest of judicial economy and not to circumvent the change of venue previously ordered. We note that we do not question the prosecutor’s motives in this case, but only the result of his actions. Whatever his motives for seeking a consolidation of the cases in Calcasieu Parish, the practical effect is to deprive the defendant of his right to trial in the changed venue and return his trial to the jurisdiction in which he obtained the change of venue. In this situation, when an apparent conflict exists between the defendant’s right to trial *895 before an impartial jury, La.Const. art. 1 § 16, and the State’s right to control the prosecution, C.Cr.P. 61, 691, 693, the defendant’s right must predominate.
The State further argued that its nolle prosequi and recharging of the defendant in Calcasieu Parish should be upheld because the defendant has not been deprived of any of his rights; i. e., the defendant still has a right to obtain a change of venue from Calcasieu Parish to another forum if he can establish that he still cannot obtain a fair trial in Calcasieu Parish. The fault in this reasoning is that the defendant has already gone through the procedure to obtain a change of venue, and there is no reason to force the defendant to repeat what he has already accomplished.
Our holding that the State cannot unilaterally frustrate the change of venue obtained by the defendant is reinforced by the fact that the State had available other alternatives if it was dissatisfied with the change of venue obtained by the defendant. At the time that the change was ordered, the State could have sought review of the ruling by applying to this court for a writ of review under our supervisory jurisdiction. La.Const. art. 5 § 5(A).[2] The State did not seek review of the order granting the change of venue. In addition, the right to seek a change of venue is a remedy available to both the State and the defendant. C.Cr.P. 621 provides:
“An application for a change of venue may be made by either the state or the defendant. It must be made at least five days prior to the date then fixed for commencement of trial; or thereafter, in the discretion of the court, any time before the first witness is sworn at the trial on the merits. The application shall be in writing, sworn to by the applicant or his counsel, and shall contain:
“(1) Allegations of fact upon which the application is based; and
“(2) A statement that the application is not made for the purpose of delay, but to obtain a fair and impartial trial.
“A contradictory hearing shall be held upon the application.” (Emphasis added).
The State has not sought a change of venue from the Gretna forum but rather attempted to change the venue (de facto) through its dismissal and rebilling, without so much as a hearing on the matter.
For the reason that the effect of the dismissals was to thwart the prior ruling changing venue, the nolle prosequi entered by the special assistant attorney general in the Twenty-fourth Judicial District Court as to each indictment is declared to be ineffective.[3] Therefore the judge assigned *896 to hear these cases in the Twenty-fourth Judicial District Court did have jurisdiction to hear the defendant’s motion for a speedy trial. The case is remanded to the Twenty-fourth Judicial District Court for proceedings not inconsistent with the views expressed herein.[4]
SANDERS, C. J., and MARCUS, J., concur in the result.
SUMMERS, J., concurs in part and dissents in part for the reasons assigned.

. The Sixth Amendment to the United States Constitution provides:
“Jury trial for crimes, and procedural rights
“In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.” (Emphasis added).
Article 1 § 16 of the Louisiana Constitution provides:
“Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.” (Emphasis added).

. The State apparently has no right to appeal from an adverse judgment on a motion to change venue under the new Constitution. La.Const. art. 5 § 5(D)-(E); State v. James, 329 So.2d 713 (La.1976). See also State v. Nichols, 337 So.2d 1074 (La.1976). Nevertheless, the supervisory jurisdiction of this court is available for the correction of abuses.

. We note that at least two other states that have faced the issue of whether, after the defendant has obtained a change of venue, the state may prosecute the defendant in the original venue (without obtaining a change of venue itself) have decided that the state may not be permitted to proceed with the prosecution in the original forum. Ex parte Lancaster, 206 Ala. 60, 89 So. 721 (Ala.1921); Johnston v. State, 118 Ga. 310, 45 S.E. 381 (Ga.1903). However, as the following quotation points out, this precise issue has not been decided in a number of jurisdictions.
“There are exceedingly few cases wherein the courts have determined whether an order granting a change of venue in a criminal prosecution which is subsequently dismissed or otherwise terminated other than on the merits is conclusive as to the venue of a second prosecution against the accused for the same offense. Because of differences in statutory provisions those cases reflect a conflict in principle as well as in result. In some jurisdictions the view has been taken that such an order is conclusive as to the venue of the second prosecution, to the extent that the second prosecution may not be had in the court from which the first prosecution was transferred. At this point, however, a divergence occurs. In at least one jurisdiction it has been held that the second prosecution must be tried in, and only in, the court to which the first prosecution was transferred, while in another jurisdiction it has been held that the venue of the second prosecution is in the county to which the first prosecution was transferred unless and until there is another change of venue to a third county. On the other hand, in other jurisdictions the view has been taken that the order of transfer does not have the effect of *896 fixing the venue of the second prosecution.” Annot., 85 A.L.R.2d 994, 997 (1962).

. Nothing in this opinion should be construed to deprive the special assistant attorney general of his right to simply nol. pros, any indictment, information or count thereof. C.Cr.P. 691, 693. We do hold, however, that any attempt to nol. pros, the indictment in Gretna that has the effect of changing venue back to Calcasieu Parish is ineffective. In State v. Alexander, 252 La. 564, 211 So.2d 650 (1968), this court, in an opinion authored by Justice (now Chief Justice) Sanders, held that where a case is.transferred from one forum to another pursuant to a motion for a change of venue and the original indictment is subsequently quashed, the grand jury of the changed venue has authority to reindict the defendant on charges arising out of the same incident, although that incident occurred in the jurisdiction where the prosecution was originally instituted.