**In re GRAND JURY PROCEEDINGS**

No. MISC 99–0414(TFH).

United States District Court,
District of Columbia.

Dec. 7, 1999.

Order to Publish Redacted Decision
Dec. 19, 2001.

Michael D. Brittin, Timothy J. Heaphy, Matthew G. Olsen, Asst. U.S. Attorneys, for the Government.

### MEMORANDUM ORDER

NORMA HOLLOWAY JOHNSON, Chief Judge.

Presently before the Court is the motion of _____ and the law firm of _____ to quash grand jury subpoenas *duces tecum* and to appoint counsel to represent and advise defendant _____ with regard to these subpoenas. Also before the Court is the motion of _____ to intervene and to join in the motion of the _____ firm to quash the subpoenas. A brief recitation of pertinent facts will be helpful in addressing the merits of these motions.

## I. BACKGROUND

On _____, _____ was indicted and charged with conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine, more than 50 grams of cocaine base, more than 100 grams of phencyclidine, more than one kilogram of heroin, and marijuana, in violation of the Controlled Substance Act, 21 U.S.C. § 846.[1] _____ other people were indicted along with _____ on charges stemming from this alleged narcotics conspiracy. On the day the indictment was handed down, a warrant was issued for _____ arrest.

_____ surrendered himself to the United States Marshal at this courthouse on _____. He was accompanied at the time of his surrender by Attorneys _____ and _____. Upon his surrender, _____ was interviewed by a representative of the Pretrial Services Agency. He informed the PSA representative that he had not worked for two and a half years. Thus, he claimed to have no source of income. _____ later told a Deputy United States Marshal that he was a self-employed handy man, but when he was processed the next day, he refused to provide any information regarding employment. _____ was promptly arraigned by Judge Lamberth. At his arraignment, _____ entered appearances on behalf of _____ as his retained counsel.

On November 2, 1999, the United States served _____ with a letter requesting that he disclose any information concerning the "form, size, and source of [his] retainer in this case." Letter of November 2, 1999, from _____ Assistant United States Attorney, to _____. _____ responded that

---

1. These facts are gleaned from uncontested proffers contained in the parties' briefing on motions before this Court. As the underlying criminal case against _____ is before the Honorable _____, this Court lacks direct involvement with the criminal action and, therefore, can only rely on what the parties have represented in connection with their grand jury motions.

he would take the request for fee information under advisement. On November 8, 1999, _____ informed the United States that he considered such fee information to be confidential communications between him and his client. When the government suggested it would seek a grand jury subpoena to compel the production of the requested information if it were not voluntarily forthcoming, _____ stated that the government's request for fee information created a conflict of interest between him and his client.

Later that day, _____ and _____ filed a motion before Judge Lamberth seeking to withdraw from representing _____ and citing the government's request for fee information as creating a conflict of interest. In their motion to withdraw, they further claimed that _____ objected to the disclosure of fee information. In response to their withdrawal motion, the United States denied that any of the fee information requested was privileged or otherwise protected from disclosure. In the government's view, such fee information is fully discoverable as it is relevant to an ongoing grand jury investigation. The United States further asserted that the request for this non-privileged, discoverable information could not possibly create a conflict of interest between _____ and his counsel.

On November 12, 1999, while the motion to withdraw was pending, the grand jury issued subpoenas *duces tecum* to _____ and the custodian of records for the _____ law firm. Before seeking these subpoenas from the grand jury, the government attorneys sought and obtained authorization for the subpoenas from the United States Attorney for the District of Columbia and the Assistant Attorney General for the Criminal Division of the United States Department of Justice.[2] The three grand jury subpoenas are identical in substance, directing that the _____ firm produce:

> Any and all documents pertaining to all incoming and outgoing payments or receipt or disbursement of funds from, for, by, or on the behalf of _____ relative to all legal and personal matters handled by you or by your law firm directly or indirectly, or through referral, including those handled by members, partners, associates, or employees in their individual capacities, including but not limited to:
>
> 1. All fee records, including fee agreements, receipts for payment, ledger entries and references reflecting payment dates, payment amounts, and forms of payment, including denominations of currency;
>
> 2. All bank account checks, money orders or other monetary instruments, or entries reflecting the conversion or transfer of any such payment or any portions thereof; and
>
> 3. All bank account deposit tickets or deposit entries reflecting deposits of such payments or any portion thereof.

---

**2.** The subpoena authorization process is relevant because _____ claim that the government did not follow Department of Justice internal procedure when it sought to serve grand jury subpoenas on attorneys for a criminal defendant. This claims appears to be both factually inaccurate and of dubious legal importance. *See United States v. Caceres,* 440 U.S. 741, 749–50, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (internal agency regulations have limited claim to court enforcement when regulations at issue are not mandated by the Constitution or by statute); *see also In re Grand Jury Proceedings,* 42 F.3d 876, 880 (4th Cir.1994)(finding the Department of Justice guidelines regarding the issuance of grand jury subpoenas to attorneys plainly are not mandated by the Constitution or federal law and, therefore, should be enforced internally by the Department and not by the courts).

These grand jury subpoenas have a return date of November 19, 1999.

On November 18, 1999, the _____ firm filed, on its own behalf, a motion to quash the grand jury subpoenas and a motion to have the Court appoint independent counsel to represent _____ interest in the subpoena dispute. At the request of the _____ firm, the Court held an emergency hearing on its motions. After hearing argument from the parties, the Court took the motions under advisement and scheduled a follow up hearing for the next morning. The Court further directed that the _____ firm appear with all documents responsive to the grand jury subpoenas enclosed in a sealed envelope, signed across the seal by Attorneys _____

On the morning of November 19, 1999, counsel for the _____ firm appeared before the Court with all documents responsive to the grand jury subpoenas sealed in two envelopes which were opened in the presence of the parties without allowing the government to review the contents of the documents. The first envelope, containing six pages, was marked as grand jury exhibit 1. Counsel for the _____ firm represented that exhibit 1 contains documents for which no specific claim of attorney-client privilege or work product doctrine is made, solely a general assertion of confidentiality and a request that the Court exercise its supervisory function to protect _____ from government interference in his relationship with his attorneys. The second envelope, containing two pages, was marked as grand jury exhibit 2. Counsel for the _____ firm claimed that it contained redacted attorney notes that should be protected from disclosure by the work product doctrine. It was represented that these documents were redacted in order to protect non-responsive notations

and that all remaining material is covered by the work product doctrine. At that hearing, the Court learned that Judge Lamberth had granted the _____ firm's motion to withdraw as _____ counsel, leaving _____ temporarily unrepresented. In light of this new information, the Court again took the motions under advisement and took custody of the responsive documents.

Later that day, _____ was appointed to represent _____ in the underlying criminal case. However, _____ quickly withdrew due to an unforeseen conflict of interest. Shortly thereafter, _____ was appointed to represent _____ On November 24, 1999, _____ acting on _____ behalf, filed a motion to intervene in this grand jury matter and a motion to join in the motion of the _____ firm to quash the subpoenas. At a hearing that same day, _____ asked for additional time to supplement his motions with a supporting memorandum. Well aware that the return date on the subpoenas at issue has already past, the Court granted _____ until noon on November 29, 1999, to supplement his motions. The Court further gave the government until noon on November 30, to file a pleading in response to the motions of the _____ firm and _____. Now that _____ is represented by counsel and these arguments have been fully briefed, the Court will address the merits of the motions.[3]

## II. DISCUSSION

### A. Motion to Intervene

 In its opposition memorandum, the United States has chosen not to oppose _____ motion to intervene. See Government's Memorandum at 9 n. 10. Moreover, under the circumstances presented, the

---

3. Due to the withdrawal of the _____ firm and the subsequent appointment of _____,

the Court finds that the motion to appoint independent counsel for _____ is moot.

motion to intervene must be granted. Even though the grand jury subpoenas sought to be quashed are directed to the _____ firm and not to _____ any asserted attorney-client privilege attaching to these documents would be held by _____ as the client. Where an individual's interest in protecting privileged materials from compelled disclosure is threatened, and it is clear that his former attorneys will not risk a contempt citation in order to safeguard that interest, "a paradigmatic case of entitlement to intervention as of right" exists. *In re Katz*, 623 F.2d 122, 124 (2d Cir.1980). Therefore, the Court will grant _____ motion to intervene.

### B. *Motions to Quash Grand Jury Subpoenas*

As a general basis for their motions to quash, the _____ firm and _____ (collectively "movants") claim that the grand jury subpoenas issued to the _____ firm interfere with _____ attorney-client relationship. Specifically, movants claim that the subpoena for fee records burdens _____ Sixth Amendment right to counsel by turning his attorneys into witnesses against him and forcing them to withdraw their representation. In addition, movants claim that the subpoenas also deny _____ his right to due process under the Fifth Amendment by allowing government prosecutors to have "control over" whom a criminal defendant may choose as his attorney.

### 1. *Right to Counsel and Due Process*

■ While movants present a creative legal theory, under the circumstances presented by this case, it is way off the mark. Moreover, the novelty of their argument explains their inability to find any court that has upheld their position under like circumstances. Rather, the Supreme Court case that comes closest to touching on their argument, *Caplin & Drysdale, Chtd. v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), stands squarely against them. In *Caplin*, the Court held that a forfeiture statute which allows the government to restrain and eventually forfeit money that is currently in the hand of a criminal defendant does not impermissibly burden a defendant's Sixth Amendment right to retain the attorney of his choice, even if those funds are the only source for defendant to hire private counsel. *Id.* at 2651–55. If the outright forfeiture of defendant's funds does not offend his Sixth Amendment rights, it is hard to see how a legitimate grand jury inquiry into the source and nature of the retainer fee he has paid to his attorneys, certainly a step short of forfeiture, can be said to burden that same right. Thus, the mere inquiry by the grand jury into an undoubtably legitimate area of inquiry cannot violate _____ right to counsel.

In addition, movants make the even more creative argument that the mere request for information by the grand jury, and the suggestion by the United States that the acceptance of a retainer fee subject to forfeiture may lead to an actual conflict, somehow creates a conflict forcing the _____ firm to withdraw. This argument is wholly without merit. Here, the _____ firm chose to voluntarily file a motion of withdrawal for a perceived conflict which Judge Lamberth granted. The Court utterly fails to see how the choice of the _____ firm to withdraw its representation can be laid at the feet of the government. Moreover, had the subpoena been complied with and all non-privileged documents turned over, the documents may very well include no incriminating material. Under those circumstances, it is clear that no conflict would exist and the _____ firm would be free to continue its representation of _____ This plausible scenario places in stark relief the fact that, if any

actual conflict does exist, it is due to the past and present conduct of _____ and the _____ firm. In no way can the government be said to have created a conflict simply by investigating potentially illegal activity. *See In re Grand Jury Matter*, 926 F.2d 348, 351 (4th Cir.1991)(holding that compliance with subpoenas requesting only documents relating to fee arrangements does not require attorney disqualification and thus does not violate the Sixth Amendment).

■ Movants due process argument is similarly unavailing and unsupported by any relevant authority. Movants argue that because the government seeks these grand jury subpoenas, it therefore has control over whom _____ chooses as his attorney. This is the exact due process claim that the Supreme Court rejected in *Caplin*, finding that it did not add anything further to defendant's Sixth Amendment claim. 109 S.Ct. at 2656–57. The same holds true in this case. Movants' Fifth Amendment due process claim simply repackages the same assertion that the government's actions in seeking grand jury subpoenas denied him the counsel of his choice. For the same reasons stated above, movants' due process claim must fail. While it is certainly conceivable that under some set facts the grand jury's power to subpoena attorneys could be abused in such a way as to deny a defendant his rights under the Fifth and Sixth Amendments, movants have failed to demonstrate that this is such a case.

### 2. *Enforceability of Grand Jury Subpoenas*

Based on their mistaken analysis of _____ constitutional right to counsel, movants urge that the Court adopt a very strict standard in order to test whether the grand jury subpoenas are enforceable. According to movants, the Court must re-fuse to enforce the subpoena "unless the prosecutor can demonstrate that the information sought not only is unprivileged, but is essential to the successful completion of an ongoing investigation or prosecution and is unavailable from any other source." _____ Firm's Memorandum in Support of Motion to Quash at 3. Not surprisingly, movants are unable to cite any relevant authority for such a stringent standard. Indeed, the absolute necessity standard urged by movants turns the well-established test for enforcing a grand jury subpoena on its head.

The law in this area is clear and it places a heavy burden on a party seeking to resist compliance with a grand jury subpoena. "[T]he longstanding principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (citations omitted). Moreover, because of its investigatory function, it is necessary for the grand jury to paint with a "broad brush." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991); *see also In re Sealed Case*, 121 F.3d 729, 755 (D.C.Cir.1997).

■ Of course, the scope of the grand jury's subpoena power is not unlimited. The Supreme Court laid out the standard for a party resisting a grand jury subpoena on grounds of relevancy:

[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance.... [W]here, as here, a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there

is no reasonable possibility that the category of materials the Governments seeks will produce information relevant to the general subject of the grand jury's investigation.

*R. Enterprises,* 498 U.S. at 301, 111 S.Ct. 722. Thus, the proper standard for denying the enforcement of the grand jury subpoenas in this matter is if the Court determines that "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.*

█ Under the *R. Enterprises* standard, it is apparent that any non-privileged materials responsive to the subpoenas issued to the _____ firm must be produced. In *In re Grand Jury Proceedings,* 42 F.3d 876 (4th Cir.1994), the Fourth Circuit confronted this same issue under a nearly identical set of facts. In that case, grand jury subpoenas were issued for the fee records of criminal defense attorneys retained by two apparently indigent persons who were implicated in a larger narcotics conspiracy. *Id.* at 877. As in the present case, at the time of arrest,' the defendants in *In re Grand Jury Proceedings* indicated that they had no source of income sufficient to retain private counsel, yet private defense counsel was retained shortly thereafter. *Id.*

The Fourth Circuit found that the sudden acquisition of funds sufficient to pay private counsel was relevant to the ongoing grand jury investigation. First, the unexplained expenditure of large sums of cash may, in and of itself, be appropriate evidence of illegal drug trafficking. *Id.* at 878. "Simply as a matter of common sense, ... persons with virtually no assets who are suddenly able to afford a private criminal defense may have a source of funds that is less than wholly legitimate." *Id.* at 878–79 (citations omitted). Second,

fee records may disclose information regarding other possible co-conspirators, such as a someone else in the narcotics organization paying for the representation. *Id.* at 879. Such evidence could lead to further criminal enterprise charges under the Racketeering Influenced and Corrupt Organizations Act. *Id.* Third, the form of the fee payment may also be relevant. *Id.* Large fees paid in cash, and the denomination of that currency, may provide evidence of narcotic distribution. *Id.* The payment of large fees may also lead to possible forfeiture or related money laundering charges. *Id.* In sum, the Fourth Circuit aptly stated:

> Whether the subpoenas will reveal incriminating evidence is at this stage speculative. Grand jury investigations, no less than other investigations, will necessarily meet dead-ends. The point is simply that leads cannot be foreclosed before they are pursued. The subject of the grand jury's investigation here was a cocaine distribution network in which [defendants] were thought to be involved. To contend that the sudden emergence of significant sums for defense of these two arrestees has no bearing on this investigation is to constrict the grand jury's role in a way not countenanced by our precedent.

*Id.* at 879.

█ The wisdom of the Fourth Circuit's conclusion that such fee record information is indeed relevant to the grand jury's investigation of a narcotics conspiracy is persuasive. Moreover, movants have failed to refute the Fourth Circuit's analysis and have not offered any relevant distinction between the cases. As the United States has represented that there is an active grand jury investigation into criminal conduct related to the narcotics rings that _____ allegedly is associated with, it is obvious that the fee information could

lead to information relevant to the general subject of the grand jury's investigation.[4]

### 3. Work Product Doctrine

■■■ Finally, the _____ firm claims that two pages, found in the envelope marked grand jury exhibit 2, contain material protected from disclosure by the work product doctrine. In making this claim, they impliedly concede that the other responsive documents, found in the envelope marked grand jury exhibit 1, do not contain material covered by the attorney-client privilege or the work product doctrine.[5] This conclusion is entirely appropriate because not all communications between an attorney and his client are privileged. In fact, fee and billing information is exactly the sort of attorney-client communication that courts have with near uniformity held not to be covered by attorney-client privilege. See, e.g., Montgomery County v. Microvote Corp., 175 F.3d 296, 304 (3d Cir.1999); In re Grand Jury Subpoena, 55 F.3d 368, 369 (8th Cir. 1995); In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir.1992); In re Grand Jury Subpoenas, 906 F.2d 1485, 1492 (10th Cir.1990); In re Osterhoudt, 722 F.2d 591, 595 (9th Cir.1983).

Of course, it is not impossible for notes regarding an attorney-client fee arrangement to also contain some matters that may be covered by the work product doc-

4. _____ makes the claim that the United States is misusing the grand jury process by issuing grand jury subpoenas to investigate the pending indictment against him. The government counters that the grand jury investigation of matters relating to this alleged narcotics conspiracy is ongoing. The United States represents that the further grand jury investigation may yield future indictments of unindicted co-conspirators or superseding indictments based on new information. In addition, the government argues that it has an obligation to investigate potential leads of yet unknown illegal activity which may arise from information pertaining to the nature and form of _____ fee arrangement.

While it is clear that the United States may not use the grand jury for the sole or dominant purpose of trial discovery in an already indicted prosecution, see In re Grand Jury Subpoena, 767 F.2d 26, 29 (2d Cir.1985), the grand jury certainly is entitled to continue a good faith inquiry into unindicted persons or uncharged criminal activity, even if that inquiry happens to uncover further evidence against an already indicted defendant. See In re Grand Jury Proceedings, 632 F.2d 1033, 1040–41 (3d Cir.1980). Moreover, information gathered in the ongoing grand jury investigation may properly form the basis for a superseding indictment against a criminal defendant. See United States v. Badger, 983 F.2d 1443, 1458 (7th Cir.1993). Here, _____ "has not made any factual showing that the grand jury's sole or dominant purpose for seeking enforcement [of the grand jury subpoenas issued to the _____ firm] is to continue, unlawfully, to investigate him subsequent to his indictment. In the absence of a contrary factual showing, the grand jury proceedings are entitled to a presumption of lawfulness and regularity." In re Grand Jury Proceedings, 632 F.2d at 1041 (citation omitted). As _____ offers nothing beyond mere surmise, his assertion that the subpoenas should be quashed because the grand jury has been misused for impermissible trial discovery must fail.

5. In contrast with the _____ firm's position, _____ asserts that the grand jury subpoenas cover materials protected by both the attorney-client privilege and the work product doctrine. See Defendant _____ Memorandum in Support of Motion to Intervene at 3. However, _____ only provides a general blanket assertion of privilege without any supporting argument. He never describes which particular documents he views as covered by these privileges and, more importantly, he fails to explain how documents that pertain to the nature and form of his fee arrangement could ever be protected by the privileges he asserts. Because it is the burden of the party claiming the privilege to present sufficient and particular facts to establish the privilege, see In re Sealed Case, 737 F.2d 94, 99 (D.C.Cir.1984), the Court finds that _____ has not met his burden and therefore his privilege claims must fail.

trine. Here, the _____ firm represents that two pages responsive to the grand jury subpoenas contain Attorney _____ handwritten notes regarding "the legitimate source of the funds used to pay and to be used to pay _____ attorney fees. Counsel's notes reflecting the *bona fides* of their attorney fees are work product." _____ Firm's Memorandum in Support of Motion to Quash at 6. Thus, the _____ firm rests its work product claim on the· assertion that notes reflecting *"bona fides"* of attorney fees are covered by the work product doctrine. However, the _____ firm neglects to explain why it believes that information pertaining to the source of its fees is properly covered by the work product doctrine.

The standard for determining if material is protected by the work product doctrine is "whether, in light of the nature of the document and the factual situation in the particular case, the document can be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998)(quotation omitted). It seems rather straightforward that information pertaining to fees and billing is usually prepared quite distinctly from the substance of the underlying litigation. In other words, the nature and form of an attorney's fee arrangement really have nothing whatsoever to do with the substance of the litigation that the attorney is retained to advise the client about. As the D.C. Circuit has recognized, "the [work product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *Id.* at 887 (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC,* 5 F.3d 1508, 1515 (D.C.Cir.1993)).

■ In accordance with these principles, the Court has reviewed the docu-

ments allegedly covered by the work product doctrine *in camera* and is now completely satisfied that Attorney _____ redacted notes regarding the source of the payment of his retainer fee are clearly documents prepared by a lawyer for nonlitigation purposes. Therefore, the work product doctrine is not applicable. Because the documents at issue are not privileged and are relevant to an ongoing, presumptively lawful grand jury investigation, the motions to quash these grand jury subpoenas must be denied in their entirety. With this Order, the Court will return to the _____ firm the documents currently held *in camera* and directs that all responsive documents must be produced to the grand jury by no later than 10 a.m., Wednesday, December 8, 1999.

Accordingly, it is this 7th day of December 1999,

ORDERED that the motion of the _____ firm to appoint counsel for _____ to assist and advise him regarding grand jury subpoenas issued to the _____ firm be, and hereby is, DENIED AS MOOT; it is further

ORDERED that the motion of _____ to intervene in this grand jury matter be, and hereby is, GRANTED; it is further

ORDERED that the motions of the _____ firm and _____ to quash grand jury subpoenas issued to _____ the law firm _____ be, and hereby are, DENIED; and it is further

ORDERED that _____ and the law firm _____ comply with the grand jury subpoenas by producing any and all responsive documents to the grand jury by no later than 10 a.m., Wednesday, December 8, 1999. The Clerk of the Court is directed forthwith to return all documents submitted to the Court *in camera* to the _____ firm.

## ORDER

THOMAS F. HOGAN, Chief Judge.

Upon consideration of the government's motion to unseal and publish the redacted Memorandum Order, which was issued December 7, 1999 and filed under seal, the lack of opposition thereto, Federal Rule of Criminal Procedure 6(e), and the entire record herein, the Court finds that continued secrecy is unnecessary to prevent disclosure of matters occurring before the grand jury because all identifying information has been redacted from the Memorandum Order. Accordingly, it is hereby

**ORDERED** that the motion to unseal and publish the redacted Memorandum Order is **GRANTED**. Accordingly, it is further

**ORDERED** that the redacted Memorandum Order shall be unsealed. Finally, it is further

**ORDERED** that the redacted Memorandum Order shall be submitted for publication in the Federal Supplement.

**SO ORDERED**.