# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50326

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

FRANCISCO ANTONIO COLORADO CESSA, also known as Francisco Colorado Cessa, also known as Pancho,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

After a jury convicted him of laundering money for the Los Zetas cartel, Francisco Antonio Colorado Cessa was facing sentencing before a federal judge in Austin. Before that hearing, the FBI received a tip about a plan to bribe the judge in exchange for a reduced sentence. A sting operation followed that resulted in bribery charges being filed in Austin federal court against Colorado, his son, and a business partner.

The defendants successfully obtained a transfer of the bribery case to federal court in Louisiana as a result of, among other things, publicity in Austin about the earlier money laundering trial and concerns about trying the

case in the courthouse where the federal judge who was the subject of the attempted bribe presides.   Not long after that transfer, the government presented a superseding indictment (it added the *mens rea* of corruptly to the allegations) to the grand jury in Austin that first returned the bribery charges. In the trial that followed in the Western District of Louisiana, the jury found Colorado guilty of both conspiring to bribe and offering a bribe to the judge presiding over his money laundering case.

We must decide whether a superseding indictment is lawful when returned by a grand jury located in the venue where the alleged crime occurred but from which the case has been transferred.  We also consider whether it was reversible error not to include definitions of "offer" and "promise" that Colorado wanted in the jury charge on bribery.

## I.

No federal court has considered a challenge to the jurisdiction of a grand jury located in the district where the alleged crime occurred to return a superseding indictment after the case has been transferred to another venue because of prejudice.  FED. R. CRIM. P. 21(a).  That is the procedure that was followed in an Eleventh Circuit case, but the defendant argued only that the pretrial publicity that warranted trial in a different venue also tainted the grand jury.  *See United States v. York*, 428 F.3d 1325, 1331 (11th Cir. 2005) (involving superseding indictment issued in the Middle District of Georgia after case had been transferred to Southern District of Georgia due to pretrial publicity).  *York* rejected that argument in part because of "the entirely different functions of the grand jury *vis-à-vis* the trial jury and the different types of evidentiary restrictions before each body." *Id.* at 1332.  Although *York* did not consider the jurisdictional challenge Colorado asserts, it is notable that neither the courts (trial or appellate) nor York's lawyer saw a procedural rule

No. 16-50326

that would prevent a grand jury from returning superseding charges involving local crimes once a Rule 21(a) transfer occurred.

The Constitution does not impose such a limit. The Fifth Amendment says nothing about venue, providing only that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. But the Sixth Amendment requires that trial be decided by a "jury of the State and district wherein the crime shall have been committed." *Id.* amend. VI; *see also* art. III, § 2 (requiring criminal trials in the state where the crime occurred). As a practical matter if nothing more, in tandem these Amendments mean that a grand jury should return an indictment only in a district where venue lies. Otherwise, the resulting indictment can be dismissed for lack of trial venue. *See, e.g.*, *United States v. Cabrales*, 524 U.S. 1, 10 (1998). Grand juries' investigating crimes located within their district of empanelment is also consistent with the grand jury's roots as a local institution. *See* Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process*, 24 FLA. ST. U. L. REV. 1, 6–11 (1996). Without having to decide whether the Constitution limits a grand jury to indicting only crimes occurring in the district where it is convened, we can easily say that constitutional principles are not offended by the Western District of Texas grand jury continuing to charge crimes allegedly taking place in Austin.

The common law practice, antecedent to the Fifth Amendment guarantee,[1] allowed only the grand jury of the county where the crime was committed to indict, though statutes could authorize grand juries in other counties to do so as well. 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE

---

[1] *Costello v. United States*, 350 U.S. 359, 362 (1956) ("The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders.").

3

No. 16-50326

LAWS OF ENGLAND *300 ("The grand jury are sworn to enquire, only for the body of the county, *pro corpore comitatus*; and therefore they cannot regularly enquire of a fact done out of that county for which they are sworn, unless particularly enabled by act of parliament."). Ancient English law was so firm in this rule that when a person was wounded in one county but died in another, "the offender was at common law indictable in neither, because no complete act of felony was done in any one of them." *Id.* This gap was fixed by statute, *id.*, just as American jurisdictions have overridden the common law rule when thought necessary, an example being a North Carolina statute allowing lynching to be charged by a grand jury in a county adjacent to the county where the crime occurred. *See State v. Lewis*, 55 S.E. 600, 603–04 (N.C. 1906).

This strong tradition of grand juries charging only local crimes typically has not been disrupted when a superseding indictment is returned after transfer to a different venue of the case generated by the original indictment. State cases of old and recent vintage have involved the local grand jury retaining its power post-transfer and the great weight of authority supports that practice.[2] *State v. Nichols*, 200 S.W.3d 115, 122 (Mo. Ct. App. 2006); *Pantazes v. State*, 831 A.2d 432, 441 (Md. 2003); *Smith v. State*, 355 A.2d 527, 531 (Md. Ct. Spec. App. 1976); *State v. Tucker*, 224 N.W. 878, 881 (N.D. 1929) ("A statute authorizing a change of venue or a change of place of trial does not in itself preclude a second indictment in the county of original jurisdiction after

---

[2] Two cases address whether it is permissible for a grand jury in the transferee district to return a superseding indictment. *State v. Alexander*, 211 So. 2d 650 (La. 1968); *Watkins v. United States*, 54 S.W. 819 (Ind. Terr. 1900). Both allowed that practice but in doing so did not hold that a grand jury in the transferor district could not have amended the charges. *See Alexander*, 211 So. 2d at 654–55; *Watkins*, 54 S.W. at 821. Even on the different question it considered, *Alexander* drew a vigorous dissent. 211 So. 2d at 660 (Barham, J., dissenting). And *Watkins* relied on a unique Indian Territory statute that made superseding indictments akin to an entirely new charge as opposed to the traditional view that they do not displace the original indictment. *See* 54 S.W. at 821.

4

a change has been effected."); *Stovall v. State*, 260 S.W. 177, 178 (Tex. Crim. App. 1924) (holding that a venue transfer does not deprive "the power in the court of original jurisdiction to return a subsequent indictment for the same offense, but denies the right in such court to try accused"); *Ex parte Lancaster*, 89 So. 721, 725 (Ala. 1921) ("[Transfer] deprives [the transferor] county, where the offense was committed, of the right to try the defendant for this offense; but it does not deprive it of the jurisdictional right to indict for the offense."); *Johnston v. State*, 45 S.E. 381 (Ga. 1903); *State v. Patterson*, 73 Mo. 695, 700 (Mo. 1881), *overruled on other grounds by State v. Roy*, 83 Mo. 268 (Mo. 1884); *but see Smith v. Commonwealth*, 25 S.W. 106, 107 (Ky. 1894) (holding that transferor county loses "all jurisdiction over the subject-matter of the indictment," including the ability to bring superseding indictments).[3]  As the earliest of these cases explains, a transfer of the case does not displace the authority of the local grand jury because "jurisdiction over the cause is one thing; the power and duty to find a new bill of indictment upon whose charges that cause shall be tried, is another and totally distinct and different thing." *Patterson*, 73 Mo. at 700 (citing *State v. Tisdale,* 2 Dev. & Bat. 159 (N.C. 1836)).

Many of these state cases do not even doubt the authority of the grand jury in the original venue to amend the charges; more often the contested question is whether the superseding indictment is automatically subject to the transfer order.  *See Smith,* 355 A.2d at 531 (concluding that the "better rule" is that subsequent indictments for the same offenses should be transferred to the transferee court "without the necessity of complying with the provisions"

---

[3]The outlier Kentucky decision has been distinguished by other courts on the ground that it does not reflect common law principles because it involved a Kentucky venue transfer statute providing that "a new indictment may be found, from time to time, by a grand jury of the county to which the removal [wa]s made." *Tucker*, 224 N.W. at 881 (quoting KENTUCKY STATUTES § 1117 (Barbour & Carroll, eds. 1894)); *Alexander*, 211 So. 2d at 660 (Barham, J., dissenting).

of Maryland's change of venue rule); *Lancaster*, 89 So. at 725; *Johnston*, 45 S.E. at 382. On that latter question, the prevailing view is that of the Supreme Court of Alabama, which held that, after a change of venue, a grand jury in the county where the offense was committed retains sole jurisdiction to issue subsequent indictments but that those indictments must then be sent straightaway to the transferee county for trial. *Lancaster*, 89 So. at 725. That is what happened here as the superseding indictment returned by the Austin federal grand jury was docketed and tried in the case pending in Louisiana federal court.

Without any constitutional or common law limits on the authority of the Austin federal grand jury to supersede its charges even after the case had been transferred to a different district, Colorado relies on a Federal Rule of Criminal Procedure. Rule 21(c) provides that "[w]hen the court orders a transfer . . . . [t]he prosecution will then continue in the transferee district," which a treatise explains to mean that "transfer is not for trial only. The entire proceeding . . . [is] to be disposed of in the transferee court." 2 CHARLES ALAN WRIGHT & PETER J. HENNING, FED. PRAC. & PROC. CRIM. § 347 (4th ed. 2009). It turns out that is not what happened here. After Colorado's trial, his case was sent back to Austin for sentencing so that the judgment being appealed is one issued from the Western District of Texas. But that does not undermine Colorado's argument that when the Austin grand jury superseded his charges, Rule 21 had divested it of jurisdiction.

His bigger problem is that the Rule does not go that far. It says "the prosecution" is sent to another district. Even with that meaning the entire criminal matter is transferred (not just trials but pretrial hearings, sentencing, etc.), we see no authority saying that deprives the grand jury in the original jurisdiction of the power to continue investigating and charging a local crime. The commentary to the Federal Rule of Criminal Procedure addressing venue

No. 16-50326

(Rule 18) indicates a "prosecution" does not encompass grand jury proceedings. It cites Congress's definition of "prosecutions" in an earlier venue statute (28 U.S.C. § 114) that required "prosecutions" to take place not just in the district but the division where the crime occurred: "the word 'prosecutions,' as used in this statute, does not include the finding and returning of an indictment." FED. R. CRIM. P. 18 advisory committee's note to the 1944 adoption; *see also* BLACK'S LAW DICTIONARY 1341 ("prosecution" means a "criminal proceeding in which an accused person is tried") (9th ed. 2004). The idea seems to be the same one animating the state court decisions cited above: a "prosecution" and the grand jury are different proceedings. Also reflective of this distinction is that when a dispute arises with a grand jury that is considering a superseding indictment, the matter is treated as a new miscellaneous filing in federal court and not part of the criminal case considering the original indictment. *See, e.g.*, *In re Grand Jury Proceedings*, 201 F. Supp. 2d 5, 12 n.4. (D.D.C. 1999); *In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F. Supp. 1059, 1061 (S.D.N.Y. 1990). The broad reading Colorado gives Rule 21 is thus in tension with the independent authority of the grand jury. *United States v. Calandra*, 414 U.S. 338, 343 (1974) ("No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials."); *cf. York*, 428 F.3d at 1332 (identifying the distinct role of the grand jury as a reason why publicity adverse to a defendant is not a basis for dismissing an indictment).

No. 16-50326

Seeing no authority clearly providing that a venue transfer displaces the authority of a federal grand jury to investigate and charge local crimes, we conclude that Colorado could be tried on the superseding indictment.[4]

## II.

The trial in Louisiana federal court lasted four days.  Colorado argued that he was merely "feeling out" the undercover agents who purported to be crooked friends of the federal judge.  In this theory of the case, Colorado never offered a bribe because he realized that his collaborators on the outside were talking to the police.  To support that defense, Colorado requested the following jury instruction:

> I have instructed you that the crime of bribery is committed if a defendant corruptly offers or promises money to a public official with the intent to induce the public official to do or omit to do any act in violation of the public official's lawful duty.  I want to explain what it means to offer or promise money to a public official.
>
> An offer or promise is made when the offeror expresses to the public official both the ability and the desire to pay.  Mere preparation to make an offer or promise, including preliminary discussions designed to feel out the public official's willingness to accept a bribe, do not constitute an offer or promise to pay a bribe.  Similarly, an agreement to engage in preliminary discussion designed to feel out a public official's willingness to accept a bribe does not, without more, constitute conspiracy to commit bribery.

The district court refused to provide the instruction, raising doubts about whether the instruction accurately described current bribery law and whether

---

[4] Recognizing what we have said about the local nature of the grand jury, Colorado argues that his motion to transfer venue waived any right he had to be indicted only by a grand jury from the district where the alleged crime took place.  But even if that motion waived more than just his Sixth Amendment vicinage right for trial, the waiver would not deprive the Austin grand jury of its authority to act.  A waiver does not always have to be accepted.  To illustrate, defendants may waive their Fifth Amendment right to face a felony charge only if the grand jury finds probable cause and proceed instead by information.  But a defendant desiring to proceed by information cannot prevent the grand jury from investigating the crime and returning an indictment.

it amounted to a directed verdict for the defense. The jury thus received only the pattern instruction, which requires the government to prove (among other things) that "the defendant directly or indirectly offered and/or promised something of value" to the public official.

Colorado asserts that his proposed instruction defining offer and promise comes from *United States v. Hernandez*, 731 F.2d 1147 (5th Cir. 1984). In *Hernandez*, the defendant attacked the sufficiency of the evidence to sustain his conviction for bribery. *Id.* at 1148–49. Citing cases from other circuits, we stated that an offer is complete when the offeror expresses an ability and a desire to pay. *Id.* at 1149. That offer was not present because the evidence did not establish that Hernandez expressed an ability or desire to pay a bribe; instead, the evidence reflected that he simply engaged in preparation for a bribery offense. *Id.* at 1150.[5]

*Hernandez* does not say that its discussion of "offer" must be included in a jury charge. Nor has any case since; indeed, we have never cited *Hernandez*'s discussion of "offer.*"* But Colorado thinks he was entitled to an instruction including its language based on the principle that a court "abuses its discretion in denying a requested instruction if (1) the requested instruction is a substantively correct statement of the law; (2) the requested instruction is not substantially covered in the charge given to the jury; and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense." *United States v. Dixon*, 185 F.3d 393, 403 (5th Cir. 1999). The government hammers away at another principle of our jury instruction cases: that "a district court does not err by giving a charge that tracks this Circuit's

---

[5] Unlike this case, *Hernandez* involved only a bribery charge, not a conspiracy to bribe. The latter, of course, does not require a completed offense. In any event, we find that the instruction with the *Hernandez* language was not required even for the substantive bribery offense.

pattern jury instructions and that is a correct statement of the law." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citing *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992)). The bribery instruction given to Colorado's jury tracks the pattern jury charge, *see* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL) § 2.09A (2015), which we have approved, *see United States v. Franco*, 632 F.3d 880, 885 (5th Cir. 2011).

There is possible tension between these two principles we have repeatedly quoted. What if the pattern charge correctly states the law, but a party requests an additional instruction that is also an accurate description of the law?

Our recent reconciling of these principles in another bribery case is instructive. *United States v. Richardson*, 676 F.3d 491, 506–07 (5th Cir. 2012). Richardson wanted the jury charge to include a long definition of the word "corruptly" that was supported by *United States v. Haas*, 583 F.2d 216 (5th Cir. 1978). *Id.* at 507. So as Colorado does, he was requesting a supplement that found support in our caselaw. But when framing the issue, we stated, "[b]ecause the district court's instruction tracked this circuit's pattern jury instruction, *we need only determine* whether the charge is a correct statement of the law." *Id.* (emphasis supplied). It was thus of no moment in *Richardson* whether the defendant's requested instruction was also accurate but more specific; the district court did not abuse its discretion because Richardson could not show that "the pattern jury instruction [was] an incorrect statement of the law." *Id.* at 508.

The same is true here. Colorado identifies nothing incorrect about the instruction that was given. The terms "offer" and "promise" are not so technical or inscrutable that a definition was necessary; the terms appear to be within the common understanding of the jury such that no instruction on the meaning of the terms was required. *See United States v. Chenault*, 844

F.2d 1124, 1131 (5th Cir. 1988). Indeed, *Hernandez* is best read as voicing a paraphrase of the word "offer," not a limiting definition of the term. *Contrast United States v. Grissom*, 645 F.2d 461, 469 (5th Cir. Unit A 1981) (reversing conviction because instruction did not limit "intent to defraud" to fraud against the government). If it were otherwise and *Hernandez* had given the word a restricted legal meaning, one would expect us to have cited the case for that point of law in the many years since it was issued. Had we constricted the meaning of "offer," Colorado could rightly argue that failing to define the word would allow the jury, following the word's ordinary meaning, to convict on facts outside the statute's prohibition. And when an instruction allows the jury to convict on innocent facts, the instruction is incorrect. *See, e.g.*, *United States v. Nelson*, 791 F.2d 336, 337–38 (5th Cir. 1986). Yet this is all hypothetical, for we did not circumscribe the ordinary meaning of "offer" in *Hernandez*. In *Hernandez*, the alleged offer—"they want to know if you can be bought, if you will change your testimony"—did not express "an ability and a desire to pay," 731 F.2d at 1150, or, in the words of the dictionary, did not "declare one's readiness or willingness" to pay a bribe, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY: UNABRIDGED 1566 (2002) (defining offer).

Treating the district court's use of the pattern charge as a safe harbor is also consistent with a trial court's "substantial latitude in framing jury instructions." *Richardson*, 676 F.3d at 506–07. And nothing prevented Colorado from arguing to the jury that the bribe was only discussed in a preliminary manner that did not amount to an actual offer. Indeed, that was a focus of his closing argument.

\* \* \*

The judgment of the district court is AFFIRMED.