# United States Court of Appeals for the Fifth Circuit

—————————

No. 24-10236
Summary Calendar

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

FREDDY CASTRO,

*Defendant—Appellant*.

—————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CR-278-1

—————————————————

Before WIENER, HO, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Defendant-Appellant Freddy Castro was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to dismiss the indictment, arguing that § 922(g)(1) exceeds Congress's power under the Commerce Clause and violates the Second Amendment in light of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S.

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

1 (2022). The district court denied the motion, and Castro subsequently entered a guilty plea without a plea agreement, and Castro timely appealed. For the following reasons, we AFFIRM.

## I.

This case arises from a domestic disturbance involving Castro and his girlfriend, Sarah Rivera. The presentence report (PSR) detailed that police responded to a domestic call in which Castro was reported to have brandished a firearm during the altercation. The call was made by Anita Perez, Rivera's mother. Castro was arrested, officers obtained a search warrant for the residence, and officers recovered a loaded firearm from Castro's hygiene bag. During a custodial interview, Castro stated that he took the firearm from the residence of Jack Duffy, Perez's boss, without Duffy's consent while Castro was at the residence to help clean the house. Duffy had suffered a brain hemorrhage and was in a nursing home at the time. In that interview, Castro further admitted that he stole additional boxes of ammunition and magazines from the house. Rivera corroborated that she and Castro were at Duffy's residence to clean and declutter it in preparation for sale and that Castro took the firearm from the home. While none of the parties interviewed noted any instructions by Duffy on what to do with the items as they decluttered the home, Perez believed Duffy had sold three or four of his other firearms.

The PSR initially calculated a guidelines range of 92 months to 115 months of imprisonment based on a total offense level of 23 and a criminal history category of VI. The PSR applied a two-level enhancement for possession of a stolen firearm, pursuant to U.S.S.G § 2K2.1(b)(4)(A), as well as an additional enhancement and an offense level adjustment not challenged on appeal. Corrections made to Castro's base offense level at the

government's request raised his total offense level to 27, resulting in a guidelines range of 130 months to 162 months of imprisonment.

Castro objected to the stolen firearm enhancement, arguing that he could not have stolen the firearm because Duffy abandoned it. In connection with the objections, Castro submitted an affidavit executed by Duffy wherein Duffy stated that he did not recall purchasing the firearm, did not report the firearm as stolen, and did not believe the firearm to have been stolen from him. The government responded by noting that Castro admitted Duffy did not know he had the firearm and that he had originally taken the firearm to try to sell it.

The district court subsequently overruled Castro's objection, noting Castro's statements during his interrogation that he believed he took the firearm without permission and that Duffy was the rightful owner. The court stated that Duffy's affidavit did not refute Castro's own admission that he took the firearm without Duffy's knowledge. The court further commented that, given Duffy's brain hemorrhage, the idea that he could consent to turning over his property was undermined by Castro's own knowledge that the firearm was not his own. The court sentenced Castro within the Guidelines range to 162 months of imprisonment, followed by three years of supervised release. Castro timely appealed.

II.

Castro makes three contentions on appeal: (1) the district court erred in applying the two-level enhancement under § 2K2.1(b)(4)(A) for possession of a stolen firearm; (2) § 922(g)(1) is unconstitutional under the Second Amendment in light of *Bruen*; and (3) § 922(g)(1) exceeds Congress's authority under the Commerce Clause because the jurisdictional requirement of interstate travel lacks a sufficient nexus to interstate commerce. Castro acknowledges that the third issue, and the second issue

under plain error review, are foreclosed by this court's precedent. We address each issue in turn.

## A.

Castro first contends that the district court erred in applying the two-level sentencing enhancement under § 2K2.1(b)(4)(A) for possession of a stolen firearm. We review the application of the Guidelines *de novo* and factual findings for clear error. *United States v. Lopez*, 70 F.4th 325, 328 (5th Cir. 2023). A factual finding is not clearly erroneous if it is "plausible in light of the record as a whole." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). However, this court will only review for plain error if the defendant's argument on appeal is unpreserved, such as when the argument on appeal is distinct from the objections made in district court. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

The Guidelines provide for a two-level enhancement if "any firearm was stolen" but do not define the term "stolen." U.S. Sent'g Guidelines Manual § 2K2.1(b)(4)(A) (U.S. Sent'g Comm'n 2023). This court has defined "stolen" broadly in this context. *United States v. Lavalais*, 960 F.3d 180, 188 (5th Cir. 2020). In *United States v. Lavalais*, the defendant argued that the firearm was not "stolen" because it was merely missing. *Id.* This court rejected that argument, concluding that Lavalais "took the firearm knowing he was not its rightful owner[,]" "made no attempt to return it[,]" and never asked for or received permission to possess the firearm from the rightful owner. *Id.* This court thus concluded that the firearm was stolen and that the "intended deprivation of the rights and benefits of ownership of the gun deems the firearm 'stolen' for the purposes of the Sentencing Guidelines." *Id.* Other circuits have similarly defined the term "stolen" in this context. *See, e.g.*, *United States v. Colby*, 882 F.3d 267, 272–73 (1st Cir. 2018) (defining "stolen" as any wrongful taking meant to

deprive an owner of the benefits and rights of ownership, even if falling short of larceny); *United States v. Jackson*, 401 F.3d 747, 749–50 (6th Cir. 2005) (characterizing "stolen" as a dishonest or secret taking, even if without an intent to permanently deprive the owner). Generally, a wrongful taking occurs, and a firearm is "stolen" for the purposes of § 2K2.1(b)(4)(A) when a defendant takes the firearm without the owner's knowledge, permission, or consent. *See Lavalais*, 960 F.3d at 188; *see also Colby*, 882 F.3d 272–73; *Jackson*, 401 F.3d at 749–50.

The record here supports the application of the enhancement to Castro under this broad interpretation of § 2K2.1(b)(4)(A). *See Lavalais*, 960 F.3d at 188. Castro admitted that the firearm belonged to Duffy and that Castro had taken the firearm from Duffy's home without permission. Like the defendant in *Lavalais*, Castro "took the firearm knowing he was not its rightful owner and made no attempt to return it." *Id.* Although Duffy stated in his affidavit that he did not believe the firearm was stolen from him, he nevertheless did not provide instruction on what to do with the items in the house. Therefore, the district court could plausibly conclude that the property was not abandoned and thus taken without permission. *See Rodriguez*, 630 F.3d at 380; *Lavalais*, 960 F.3d at 188.

Castro contends that the district court improperly weighed his subjective belief in determining under § 2K2.1(b)(4)(A) whether the firearm was stolen because the Guidelines' commentary explains that the enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen." § 2K2.1 cmt. n.8(B). While Castro argued that the district court should give minimal weight to his post-arrest statements, he did not contend that the district court was prohibited from considering the statements, so that issue is not preserved and we review it for plain error only. *See Mondragon-Santiago*, 564 F.3d at 361. To demonstrate plain error, Castro had to establish a clear or obvious error that

affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

District courts are generally permitted to consider any information with sufficient indicia of reliability when making factual findings, including unrebutted facts contained in a PSR. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). Additionally, while the commentary explains that the enhancement "applies regardless" of the defendant's state of mind, it does not explicitly prohibit inclusion of the defendant's belief. *See* § 2K2.1 cmt. n.8(B). We have previously applied the enhancement based on evidence that included post-arrest statements by the defendant which demonstrates that the firearm was wrongfully taken. *See, e.g.*, *Lavalais*, 960 F.3d at 185, 188 (affirming the application of the enhancement based, in part, on the defendant's own admissions that he possessed the firearm and the lack of any evidence that he was given permission to do so). Therefore, the district court did not err by considering Castro's post-arrest statements.

Regardless, Castro has not highlighted precedent or language in the commentary firmly establishing that courts cannot consider the subjective belief of the defendant, so even if the district court erred in applying the enhancement, the error would likely not be clear or obvious. *See Puckett*, 556 U.S. at 135. Moreover, Castro has not demonstrated that such an error affected his substantial rights because, as discussed more fully below in the context of harmless error—which is a higher standard—he cannot show that he would have received a lesser sentence but for the alleged error. *See Mondragon-Santiago*, 564 F.3d at 364–65.

Even if the enhancement were erroneously applied, we will not vacate the sentence if such error does not affect the sentence actually imposed. *See United States v. Delgado-Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009). Although Castro contends that the district court never considered the correct

guidelines range if this enhancement was improper, any error would still be harmless if the district court would have imposed the same sentence for the same reasons had it considered the correct guidelines range. *See United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). The government has the burden to "convincingly demonstrate[]" that the same sentence would have been imposed and that the sentence was "not influenced in any way by the erroneous Guidelines calculation." *United States v. Reyna-Aragon*, 992 F.3d 381, 388 (5th Cir. 2021) (internal citation and quotation marks omitted).

Here, the government highlights that the district court considered (1) the 18 U.S.C. § 3553(a) factors, (2) Castro's extensive criminal history, and (3) the particular facts of this case, and that the court determined that a 162-month sentence was appropriate even if it was incorrect in its application of the two-level enhancement under § 2K2.1(b)(4)(A). When it imposed the sentence, the district court noted that Castro has a criminal history dating back to the age of sixteen, including several convictions that are "assaultive in nature." The court further stated that Castro engaged in "this criminal conduct while on supervision." Given this background, the court explicitly stated that even if it were wrong in its rulings on Castro's objections to the PSR, it believed that this sentence was appropriate under the § 3553(a) factors.

The district court's statements indicate that it would have imposed the same sentence even without this enhancement. *See Reyna-Aragon*, 992 F.3d at 388–89. Therefore, because the government has demonstrated that the court would have imposed the same sentence for the same reasons absent the enhancement, any error in the enhancement's application would be harmless. *See Richardson*, 676 F.3d at 511. Castro's challenge on this issue fails.

B.

Next, we turn to Castro's contention that § 922(g)(1) is unconstitutional on its face in light of *Bruen* because its prohibition of firearm possession by felons covers conduct protected by the Second Amendment and lacks justification in the nation's historical tradition of firearm regulation. Castro acknowledges that he did not preserve the issue in the district court and that this court should only review it for plain error. He also correctly notes that the constitutionality of § 922(g)(1) under plain error review is foreclosed by our precedent. *See United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1081 (2024). Because Castro made this concession, the government did not brief this issue.

However, Castro did preserve that issue for review by filing a motion to dismiss on the same grounds in the district court. *See United States v. Penn*, 969 F.3d 450, 459 (5th Cir. 2020) (concluding that a challenge to the constitutionality of § 922(g) under the Commerce Clause was preserved by raising it in a motion to dismiss the indictment). Therefore, we review Castro's preserved challenge to the constitutionality of that federal statute *de novo. United States v. Portillo-Munoz*, 643 F.3d 437, 439 (5th Cir. 2011).

In ruling that a state firearm licensing scheme was unconstitutional, the Supreme Court in *Bruen* applied a new test for assessing the constitutionality of firearm regulations. *Bruen*, 597 U.S. at 17, 24. To uphold a firearm regulation, *Bruen* requires (1) that the Second Amendment's plain text covers the defendant's conduct, and (2) that the government "justif[ies] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. The Supreme Court also recently ruled that laws prohibiting possession of firearms by persons subject to a domestic violence restraining order are constitutional under *Bruen. United States v. Rahimi*, 602 U.S. 680, 702 (2024). However, because Rahimi involved a challenge to § 922(g)(8), the case is not dispositive of whether § 922(g)(1) is constitutional. *Id.* at 693–95.

Until recently, it has been unclear whether § 922(g)(1) could survive a preserved *Bruen* challenge, as neither this court nor the Supreme Court had addressed a preserved *Bruen* challenge. This changed with *United States v. Diaz*. 116 F.4th 458 (5th Cir. 2024). Reviewing both facial and as-applied challenges to § 922(g)(1) *de novo*, we held that, although the Second Amendment's plain text covers conduct prohibited by the statute, the government succeeded in establishing that disarming a person with Diaz's criminal history of theft was consistent with historical tradition. *Id.* at 465–72. As a result, both his facial and as-applied challenges failed. *Id.*

To prevail on a facial challenge, the defendant must establish that there is "no set of circumstances under which the statute would be valid." *Id.* at 471 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). We determined that because the statute was constitutional as applied to Diaz, he could not show that there was no set of circumstances under which the statute would be valid. *Id.* at 471–72. Thus, *Diaz* forecloses any challenge to the facial constitutionality of the statute. *See id.* Castro's challenge on *Bruen* grounds fails.

## C.

Finally, we turn to Castro's contention that § 922(g)(1) violates the Commerce Clause. Section 922(g) bars various classes of individuals from possessing firearms "in or affecting" interstate or foreign commerce. 18 U.S.C. § 922(g). Castro asserts that the "correct interpretation" of § 922(g) requires more than the mere crossing of state lines. He correctly concludes that this challenge is foreclosed by our precedent, but he raises the issue nonetheless to preserve his right to further appeal on the issue. *See United States v. Rawls*, 85 F.3d 240, 242–43 (5th Cir. 1996); *United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993).

No. 24-10236

Castro further contends that § 922(g) is unconstitutional because it exceeds the scope of Congress's authority under the Commerce Clause. Again, he correctly concludes that this challenge is foreclosed by our precedent. *See United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013); *United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020).

AFFIRMED.